UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL RETIREMENT SYSTEM OF
THE CITY OF DETROIT and POLICE AND
FIRE RETIREMENT SYSTEM OF THE
CITY OF DETROIT,

    Plaintiffs,

v.

ONYX CAPITAL ADVISORS, LLC, et al.,

    Defendants.

                                       /

Case No. 10-CV-11941

HONORABLE DENISE PAGE HOOD

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
and
NOTICE OF HEARING ON
MOTION FOR PRELIMINARY INJUNCTION**

## I.    BACKGROUND

This matter is before the Court on an Ex Parte Motion for Temporary Restraining Order submitted by Plaintiffs General Retirement System of the City of Detroit ("GRS") and Police and Fire Retirement System of the City of Detroit ("PFRS") dated June 2, 2010. Plaintiffs filed a sixteen-count Complaint against Defendants Onyx Capital Advisors, LLC ("Onyx Capital"), Onyx Capital Advisory Fund I, LP ("Onyx Capital Advisory"), Second Chance Motors, Inc. ("Second Chance"), SCM Credit, LLC ("SCM Credit"), SCM Finance, LLC ("SCM Finance"), 1097 Sea Jay, LLC ("1097 Sea Jay"), Roy Dixon, Jr. ("Dixon") and Michael A. Farr ("Farr") (collectively "Defendants"). The Complaint alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), and the Securities Act of 1933, 15 U.S.C. § 77 *et seq.* Plaintiffs also allege conversion, fraudulent and negligent misrepresentations, breach of fiduciary duty, breach

of contract and accounting. Plaintiffs seek a temporary restraining order to prevent Defendants from the destruction of evidence and further concealment of the holders of the misappropriated funds and to require Defendants immediate access to review, inspect and copy the records. (Brief, p. 1)

Plaintiffs are pension plans and trusts established by the Charter and Municipal Code of the City of Detroit, Michigan. (Complaint, ¶¶ 1-2) Plaintiffs entered into an Agreement of Limited Partnership with Defendant Onyx Capital Advisory dated June 7, 2007 ("Limited Partnership Agreement"). Plaintiffs each contributed $10,000,000 to the Onyx Fund. (Complaint, ¶¶ 12-13) Plaintiffs claim that Defendant Dixon made material misrepresentations of fact and failed to state material facts to Plaintiffs in order to induce Plaintiffs to contribute the Onyx Fund. (Complaint, ¶ 14) Defendants Dixon and Onyx Capital distributed to Plaintiffs a private placement memorandum that disclosed that the Onyx Fund would invest in "equity and, in certain cases, mezzanine securities of a diverse portfolio of companies across a variety of industries." (Complaint, ¶ 15) Defendants Dixon and Onyx Capital further represented to Plaintiffs, among others, that the Onyx Fund would invest in middle-market companies, invest primarily in Midwest-based companies, invest no more than 20% of its assets in a single company and rely upon Elliot K. Fullen for due diligence and deal-flow activities. (Complaint, ¶ 16) Plaintiffs claim that Defendants Dixon and Onyx Capital failed to make capitals on a *pro rata* basis as required under the Limited Partnership Agreement, misrepresented the actual amounts requested from other limited partners, failed to inform Plaintiffs that a $7,000,000 investment had failed, and that Defendants Dixon and Onyx Capital were using the funds earmarked for that failed investment to invest in SCM Credit. (Complaint, ¶ 17) Plaintiffs further claim that Defendants Dixon and Onyx Capital misappropriated the investments by taking management fees in excess of those allowed under the Limited Partnership Agreement. Plaintiffs

also claim that Defendants worked with Defendants Farr and the corporate Defendants to invest in corporate Defendants without adequate prior approval as required by the Limited Partnership Agreement. Plaintiffs state that Defendants Dixon and Onyx Capital used proceeds for personal and business expenses, including construction of a home in Atlanta, Georgia and mortgage payments on rental properties in Detroit and Pontiac, Michigan. (Complaint, ¶ 18) Plaintiffs allege that Defendants sought to conceal their fraudulent conduct by failing to provide Plaintiffs with copies of Onyx Fund's tax returns as required by the Limited Partnership Agreement, providing false annual investor's report and manipulating deposit and withdrawal transactions. (Complaint, ¶ 19) Plaintiffs had no knowledge that the monies invested were converted and used for Defendants' own benefit. (Complaint, ¶ 21)

## II.     ANALYSIS

Plaintiffs seek an order for a temporary restraining order preventing the destruction of evidence of wrongful conduct and the concealment of the identity of the holders of the misappropriated funds. Plaintiffs rely on the documents filed in a case brought by the United States Securities and Exchange Commission ("SEC") in a related suit, Case No. 10-11633, in addition to the Limited Partnership Agreement entered into by Plaintiffs and Defendants. Plaintiffs claim that a separate temporary restraining order from the order entered in the SEC case is necessary because that temporary restraining order may be insufficient to completely protect Plaintiffs from irreparable harm.

The Court has the authority to issue a temporary restraining order under Rule 65(b) of the Rules of Civil Procedure which states:

> **(b) Temporary Restraining Order.**
>
>> (1) *Issuing Without Notice*. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>>> (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). A TRO expires in 14 days unless the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. Fed. R. Civ. P. 65(b)(2). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 (1969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973).

Plaintiffs' counsel has not submitted a certification under Rule 65(b) as to why a notice to opposing counsel should not be required prior to the issuance of a temporary restraining order. Plaintiffs' counsel did submit a declaration indicating contact with Defendant Dixon's counsel regarding a request to access the records which was denied by defense counsel.

Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the

nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. The Supreme Court addressed the issue of whether a district court has the authority to issue a preliminary injunction under Rule 65 for the purposes of protecting assets in anticipation of the judgment of the court. In *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that the district court had no authority to issue a preliminary injunction preventing a defendant from disposing of assets pending adjudication of a plaintiff's claim for monetary damages. *Id.* at 333. The *Grupo Mexicano* case involved a breach of contract claim for money damages by unsecured creditors of a group of investors who purchased notes involving a toll road construction. The Supreme Court recognized the case of the usual preliminary injunction where a plaintiff seeks to enjoin, pending the outcome of the litigation, an "action" that a plaintiff claims is unlawful. *Id.* at 314. The Supreme Court noted the difference between that injunctive relief and a preliminary injunction to protect an anticipated judgment of the court. *Id.* at 315. The Supreme Court stated that if a district court enters a preliminary injunction to protect assets in anticipation of a judgment of the court, as opposed to enjoining an "act" by the defendant, the defendant is harmed by the issuance of the unauthorized preliminary injunction. *Id.* at 315. An unsecured creditor has no rights at law or in equity in the property of the debtor prior to judgment. *Id.* at 330. The only cases where an unsecured creditor can obtain preliminary injunctive relief to prevent a defendant from disposing of assets pre-judgment include situations where statutes permit the court to do so, such as in a bankruptcy action, or the Securities Act, or under statutes authorizing tax injunctions. *Id.* at 326-328. Traditionally, courts of equity have not interfered with the debtor's disposition of his/her property at the instance of a nonjudgment creditor. *Id.* at 329. A creditor must first obtain a judgment because a debtor has a right to a jury trial on the legal claim. *Id.* at 330. The

5

Supreme Court noted that any prejudgment remedy may be sought under Fed.R.Civ.P. 64 which authorizes use of prejudgment remedies available under State law. *Id.* at 330-331.

In *Grupo Mexicano,* the Supreme Court answered the narrower question of "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court reasoned that historically, a court of equity could not issue such provisional relief in the context of an action for money damages. *Id.* at 1968-69 (noting the "general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property"). The Supreme Court struck down the injunction issued by the lower court. *Id.* at 333. The Supreme Court, however, distinguished cases in which a plaintiff seeks equitable relief. *Id.* at 324-25. *See e.g., Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940) (upholding a preliminary injunction that prevented a party from transferring assets as "a reasonable measure to preserve the status quo pending final determination of the questions raised by the bill" where the complaint stated claims for equitable relief (namely, rescission of contract and restitution)). The Supreme Court stated that *Deckert* was distinguishable from *Grupo Mexicano* because, as the Supreme Court took pains to explain, "the bill stated a cause [of action] for equitable relief." The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available to a creditor's bill seeking equitable assistance in the collection of a legal debt. *Id.* at 325 (quoting *Deckert,* 311 U.S. at 288).

Plaintiffs in this case assert mostly damages and equitable relief in the form of an accounting (Count XV). Pursuant to *Grupo Mexicano,* this Court cannot issue the injunction on Plaintiffs' claims for money damages. However, as to the claim of accounting, the Court may be able to issue

6

an injunction as to these assets. Courts have held that in order to issue an order freezing certain assets, the court must have sufficient evidence to show a threat that an individual will dissipate the assets. *See Newby v. Enron Corporation,* 188 F. Supp. 2d 684, 707-08 (S.D. Tex. 2002) In this case, Plaintiffs, relying on the documents filed by the SEC in a related case, have shown, and the Court ruled in that case, that there is a threat Defendants will dissipate or have dissipated assets. Plaintiffs' Motion for Temporary Restraining is granted on the issue of dissipation of assets.

Plaintiffs also request immediate access to the records which is a term under the parties' agreement, which the Court has yet to determine was breached. This request is essentially a request for expedited discovery. A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause or need in order to justify deviation from the normal timing of discovery. *See Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 420 (D. Colo. 2003); *Diplomat Pharmacy, Inc. v. Humana Health Plan, Inc.,* 2008 WL 2923426 (W.D. Mich. Jul. 24, 2008)(unpublished). Other than preserving the records, Plaintiffs have not sufficiently justified deviation from the normal timing of discovery. The Court, in the SEC temporary restraining order and in this Order, orders Defendants not to further dissipate their assets and to preserve the records. Plaintiffs have not carried their burden of showing good cause or need in order to justify deviation from the normal timing of discovery. Plaintiffs' request for immediate access to the records is denied.

Given the amount alleged to have been misappropriated in this case, the Court finds a security need not be posted.

## III.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Temporary Restraining Order is

granted in part and denied in part. The Court, having read the pleadings and exhibits thereto, and being satisfied that a temporary restraining order is justified to prevent the risk of irreparable harm of loss of evidence, and that immediate and irreparable injury, loss, or damage will result to the Plaintiffs before the Defendants can be heard in opposition; and pursuant to Fed. R. Civ. P. 65(b);

Now, therefore, it is hereby ORDERED that:

A. Plaintiffs' Motion for Temporary Restraining Order **(Doc. No. 5, filed 6/3/2010)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above.

B. Defendants and their agents are prohibited from destroying, altering, transferring, disposing, or mutilating of any and all corporate or personal records pertaining in any way to the funds at issue in this action, or any other personal or corporate funds or assets in Defendants' possession since June 7, 2007, the date of the Onyx Capital Advisory Fund I, LP Limited Partnership Agreement, including but not limited to books, papers, electronically stored information, emails, or communications, records, documents, correspondence, handwritten notes, memoranda, bank statements, electronic accounting databases, ledgers, brochures, manuals, accounts, statements, files and other property in the possession, custody, or control of any of the Defendants (the "Records").

C. Defendants are prohibited from attempting to have any such Records in the possession, custody, or control of third parties destroyed or compromised in any manner.

D. Defendants are required to take any and all reasonable steps to insure that any records in the possession, custody, or control of third parties are not destroyed or compromised in any manner.

8

E.  Notice of this order **must be served on Defendants by June 7, 2010** and may be accomplished by delivery of a copy of the order by first class mail, email, overnight delivery, facsimile, or personally by agents or employees of Plaintiffs or their counsel upon any of the Defendants. For purposes of notice on anyone in possession of documents, records, assets, funds, property, or property rights, or anyone else who may be subject to the records preservation provisions of this order, actual notice of this order shall be deemed complete upon notification by any means, including, but not limited to, first class mail, email, overnight delivery, or facsimile transmission of this order.

F.  Defendants must file their responses to the Motion for Preliminary Injunction with the Clerk's Office by **June 14, 2010.** Any reply must be filed by **June 16, 2010.** A hearing on Plaintiffs' Motion for Preliminary Injunction is set for **Friday, June 18, 2010, 9:00 a.m.** before the Honorable Denise Page Hood, Theodore Levin United States Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan. The parties must meet and confer to narrow the issues and exchange witness lists and exhibits to be presented at the hearing, if any. A joint witness list must be submitted to the Court by June 16, 2010.

G.  Unless otherwise extended by order of this Court, this order shall expire fourteen (14) days after entry.

**SO ORDERED.**

                                              s/Denise Page Hood  
                                              DENISE PAGE HOOD  
                                              United States District Judge  
DATED: June 03, 2010

Detroit, Michigan
TIME OF ISSUANCE: 5:03 p.m.
THE CLERK SHALL FILE THIS ORDER FORTHWITH