**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GENERAL RETIREMENT SYSTEM OF
THE CITY OF DETROIT, POLICE AND
FIRE RETIREMENT SYSTEM OF THE
CITY OF DETROIT, and THE BOARD OF
TRUSTEES OF THE CITY OF PONTIAC
GENERAL EMPLOYEES RETIREMENT
SYSTEM,

      Plaintiffs,

                                    Case No. 10-CV-11941

v.

                                    HONORABLE DENISE PAGE HOOD

ONYX CAPITAL ADVISORS, LLC, ONYX
CAPITAL ADVISORY FUND I, LP, SECOND
CHANCE MOTORS, INC., SCM CREDIT, LLC,
SCM FINANCE, LLC, 1097 SEA JAY, LLC,
ROY DIXON, JR., and MICHAEL A. FARR,

      Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION TO SET ASIDE CLERK'S**
**ENTRY OF DEFAULT, GRANTING IN PART AND DENYING IN PART**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT,**
**MOOTING MOTION TO STAY DISCOVERY, and**
**DENYING WITHOUT PREJUDICE MOTION TO COMPEL DISCOVERY**

**I.      BACKGROUND**

On May 13, 2010, Plaintiffs General Retirement System of the City of Detroit and the Police

and Fire Retirement System of the City of Detroit filed a Complaint against several defendants. A

First Amended Complaint was filed on June 7, 2010 and then a Second Amended Complaint was

filed on November 1, 2010. The Second Amended Complaint currently governs this matter. There

are three Plaintiffs in the Second Amended Complaint: General Retirement System of the City of

Detroit ("GRS-Detroit"), the Police and Fire Retirement System of the City of Detroit ("PFRS-Detroit"), the Board of Trustees of the City of Pontiac General Employees Retirement System ("Pontiac-GERS"). The Second Amended Complaint is against the following Defendants: Onyx Capital Advisors, LLC ("Onyx Capital"), Onyx Capital Advisory Fund I, LP ("Onyx Fund"), Onyx Intelligence Solutions, LLC ("Onyx Intelligence"), Second Chance Motors, Inc. ("Second Chance"), SCM Credit, LLC ("SCM Credit"), SCM Finance, LLC ("SCM Finance"), 1097 Sea Jay, LLC ("Sea Jay"), Roy Dixon, Jr. ("Dixon"), Michael A. Farr ("Farr"), and Erica Robertson ("Robertson") (collectively "Defendants").

There were originally 22 counts alleged in the 67-page Second Amended Complaint. Counts II (Aiding and Abetting Violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q) and Count IV (Aiding and Abetting Violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10(b)-5) have been dismissed against Farr, Second Chance, SCM Credit, SCM Finance and Sea Jay. (No. 144, Order). The claims set forth in the Second Amended Complaint against Defendants are based on violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), and the Securities Act of 1933, 15 U.S.C. § 77 *et seq.* Plaintiffs also allege conversion, fraudulent and negligent misrepresentations, breach of fiduciary duty, breach of contract and accounting.

GRS-Detroit, PFRS-Detroit, and Pontiac-GERS entered into a limited partnership with Onyx Capital, forming Onyx Fund. (Limited Partnership Agreements dated 6/7/07 and 6/25/07) GRS-Detroit and PFRS-Detroit each committed to contribute $10,000,000 to the Onyx Fund, of which GRS-Detroit contributed $10,000,000 and PFRS-Detroit contributed $9,945,749. (Sec. Am. Comp., ¶¶ 20-21) Pontiac-GERS committed to contribute $5,000,000 to the Onyx Fund, of which it

2

contributed $3,643,200. (Sec. Am. Comp., ¶ 22) Plaintiffs allege that Defendants made material misrepresentations of fact as to the nature of the investments. (Sec. Am. Comp., ¶ 23) They further allege that the Farr entities conspired with the Onyx entities to implement a scheme to induce Plaintiffs to invest funds where each Defendant improperly obtained some of the Subject Monies for their personal benefit and the benefit of the companies they owned and/or controlled. (Sec. Am. Comp., ¶ 24) As a result of Defendants' conduct, the United States Securities and Exchange Commission initiated a civil action against Onyx Capital, Dixon and Farr alleging various violations of the Securities Act, the Exchange Act and the Advisers Act. (Sec. Am. Comp., ¶ 118) (Case No. 10-11633, *United States SEC v. Onyx Capital*).

This matter is before the Court on two motions filed by the Farr Defendants (Sea Jay, Farr, SCM Credit, SCM Finance and Second Chance): Motion to Set Aside Clerk's Entry of Default and Motion to Dismiss Second Amended Complaint. The Motion to Set Aside Clerk's Entry of Default will be addressed first, given that the Farr Defendants cannot proceed to their Motion to Dismiss since there is currently a Clerk's Entry of Default against these entities. Responses and replies have been filed on both motions. The Court will also address discovery matters as to the Farr Defendants.

## II.   MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT BY FARR ENTITIES

The Farr Defendants filed the instant Motion to Set Aside Clerk's Entries of Default which were entered against them on November 29, 2010 (Doc. Nos. 117, 119, 120, 121, 122). Plaintiffs assert they neither concur nor oppose the motion, but claim there was no agreement to extend the time to file a response to the Second Amended Complaint.

Rule 55(c) of the Rules of Civil Procedure states that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P.

55(c). Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default. *Shepard Claims Service v. William Darrah & Assoc.,* 796 F.2d 190, 193 (6th Cir. 1986). Three factors must be determined to set aside a default under Rule 55(c): 1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether culpable conduct of the defendant led to the default. *Id.* at 192. All three factors must be considered in ruling on a motion to set aside entry of default. *Id.* at 194. However, when the first two factors militate in favor of setting aside the entry of default, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in absence of a willful failure of the moving party to appear and plead. *Id.* In a Rule 55(c) motion to set aside entry of default, the "good cause" standard is applied and it is not absolutely necessary that the neglect or oversight be excusable as a reason for the delay. To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings. *Id.*

In *Shepard Claims Service,* the court of appeals found that because defendant filed an entry of appearance and an answer shortly after learning that default had been entered, the delay was not lengthy and there was no pattern of disregard for court orders or rules. The strong policy in favor of deciding cases on the merits outweighed any inconvenience to the court or plaintiff. *Id.* The Sixth Circuit notes that a more lenient standard is applied to Rule 55(c) motion where there has only been an entry of default as opposed to the more stringent standard applied to Rule 60(b) motions where a default judgment has been entered. *Id.* at 193. Since entry of default is just the first procedural step on the road to obtaining a default judgment, the same policy of favoring trials on the merits applies. *Id.*

The Second Amended Complaint was filed on November 1, 2010. The Farr Defendants'

4

response to the Second Amended Complaint was due by November 18, 2010.  The Farr Defendants assert they have shown good cause in that primary counsel, Charles Floyd, passed away on October 26, 2010, leaving local counsel, S. Allen Early, with the sole responsibility for the preparation of a responsive pleading to the Second Amended Complaint.  Mr. Early filed a responsive pleading, a Motion to Dismiss the Second Amended Complaint on November 29, 2010.  Mr. Early claims he erroneously assumed that he had obtained an extension of time to file a response but apparently did not based on Plaintiffs' response.  Mr. Early did obtain extension of certain dates in the Scheduling Order already entered by the Court, in order to enable the Farr Defendants to obtain new counsel in Georgia.  The deadline for the responsive pleading was not included in the agreed extension of the Scheduling Order submitted to the Court.  The Farr Defendants argue that Plaintiffs will not suffer any prejudice for the late filing of their Motion to Dismiss.  The Farr Defendants claim that they have obtained new Georgia counsel so that Mr. Early, a sole practitioner, will not have to continue bearing sole responsibility for this litigation.  They argue there is no history of dilatory action by the Farr Defendants prior to Mr. Floyd's death.

Because Plaintiffs do not "expressly" oppose the Motion, Plaintiffs have not shown they will be prejudiced to the late filing of the Farr Defendants' Motion to Dismiss the Second Amended Complaint.  Plaintiffs filed a response to the Motion to Dismiss.  The Scheduling Order set forth by the Court, along with the agreed to extension by Plaintiffs, provide that discovery is to be completed by September 30, 2011.  The first factor--whether the plaintiff will be prejudiced–has been met in that the Court finds Plaintiffs are not prejudiced by the filing of the Motion to Dismiss the Second Amended Complaint in lieu of filing Answers to the Second Amended Complaint.

As to the meritorious defense factor, as set forth in the Farr Defendants' Motion to Dismiss,

5

there may be a meritorious defense to the Second Amended Complaint.  It is noted that the parties agreed to dismiss Counts II and IV of the Second Amended Complaint against the Farr Defendants, indicating that Plaintiffs agree, at this juncture, that the Farr Defendants had a meritorious defense to the dismissed counts.

Regarding the third factor–delay, based on the appearances filed on behalf of the Farr Defendants, the motions filed by the Farr Defendants and the participation by local counsel and Mr. Floyd, prior to his death, by responding to various hearings and conferences previously held before the Court, the Farr Defendants have not engaged in conduct intended to delay the matter.  Lead counsel's death is surely an event which cannot be predicted.  The claims against the Farr Defendants are many and serious in this case and in the related SEC Complaint.  Any delay in responding to the Second Amended Complaint is excusable.

For the reasons stated above, the Farr Defendants' Motion to Set Aside the Clerk's Entries of Default is granted.

## III.  THE FARR DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

### A.  Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted).  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2)

6

entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation."  *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).  For a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show [n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).  The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may  also be taken into account.  *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

      **B.**    **Count II, Aiding and Abetting in violation of Section 17(a) of the SEC and Count IV, Aiding and Abetting in violation of Section 10(b) of the SEC.**

This portion of the Farr Defendants' Motion to Dismiss as to Counts II and IV is MOOT,

given that the parties entered into a Stipulation and Order dismissing these two counts.  (Order, Doc. No. 144)

The remaining motion seeks to dismiss the following claims against the Farr Defendants: the RICO claims (Counts V and VI); conversion (Count VII); statutory conversion (Count VIII); fraudulent misrepresentation (Count IX); negligent misrepresentation (Count X); silent fraud (Count XI); breach of fiduciary duty (Count XII); unjust enrichment (Count XV); money had and received (Count XVI); civil conspiracy (Count XVIII); equitable accounting (Count XXI); and, constructive trust (Count XXII).

### C.    RICO CLAIMS, Counts V and VI

The only Farr Defendant alleged in Count V is the individual Farr Defendant, Michael A. Farr.  Count V alleges a violation of 18 U.S.C. § 1964(c).  In Count VI, all the Farr Defendants are alleged to have violated 18 U.S.C. § 1964(d)(sic).  The Farr Defendants move to dismiss the RICO claims in Counts V and VI claiming that 18 U.S.C. § 1964(c) bars such an action.  Plaintiffs respond that the factual allegations against the Farr Defendants do not relate to the "purchase" or "sale" of securities but to Defendants' post-investment improper management and misappropriation.

18 U.S.C. § 1964(c) provides,

> (c)  Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. ...*

18 U.S.C. § 1964(c).

The Private Securities Litigation Reform Act ("PSLRA") amended RICO in 1995 "to

8

eliminate as a predicate act for a private cause of action under [RICO], any conduct actionable as fraud in the purchase or sale of securities." *Matthews v. Kidder Peabody & Co.,* 161 F.3d 156, 157 (3d Cir. 1998); *Ouwinga v. John Hancock Variable Life Ins.,* 2010 WL 4386931 * 3 (W.D. Mich. Oct. 29, 2010)(unpublished).  The amendment was intended to eliminate securities fraud as a predicate act in civil RICO claims and to prevent pleading specified offenses, such as mail or wire fraud, as predicate acts, if the offenses are based on conduct that could have been actionable as securities fraud. *Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.,* 189 F.3d 321, 327 (3d Cir. 1999); *Ouwinga,* 2010 WL 4386931 at *4.  For a private plaintiff to establish securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, the following elements must be proved:  1) a misrepresentation or omission of a material fact; 2) scienter (i.e., a wrongful state of mind) on the part of the defendant; 3) a connection with the purchase or sale of a security; 4) reliance on the misrepresentation (i.e., transaction causation); 5) economic loss; and 6) a causal connection between the material misrepresentation and the loss (loss causation). *Brown v. Earboard Sports USA, Inc.,* 481 F.3d 901, 917 (6th Cir. 2007).

The element at issue in this case is whether Plaintiffs' allegations of "post-investment improper management and misappropriation" are considered to be acts "in connection with the purchase or sale of a security."  Section 10(b) makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b). A fraud is "in connection with" a purchase or sale of securities when there are "deceptive practices touching [upon the purchase or] sale of securities." *Superintendent of Ins. v. Bankers Life & Cas.*

9

*Co.,* 404 U.S. 6, 12-13 (1971). The "in connection with" language is read broadly, to include the investment value of a particular security and misrepresentations beyond those implicating the investment value of the security. *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 943 (3d Cir. 1985). Misappropriation of bond sale proceeds to cover "rubber" checks previously used to purchase securities have been brought under section 10(b). *Id.* The "touching" requirement means some "causal connection between the alleged fraud and the purchase or sale" of a security, including a subsequent purchase or sale. *Id.* The Supreme Court has emphasized that the federal securities laws were designed "to achieve a high standard of business ethics in every facet of the securities industry." *Luzerne County Retirement Board v. Makowski,* 627 F.Supp.2d 506, 558 (M.D. Penn. 2007)(quoting *United States v. Naftalin,* 441 U.S. 768, 775 (1979)). The Supreme Court has defined the scope of "in connection with" very broadly to encompass a "fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide." *Ouwinga,* 2010 WL 4386931 at *5 (quoting *S.E.C. v. Zandford,* 535 U.S. 813 825 (2002)). Courts consider the allegedly fraudulent scheme as a whole. *Id.* A surgical presentation of the cause of action cannot avoid the determination that the conduct giving rise to the predicate offenses amount to securities fraud. *Id.*

Count V alleges Defendants Dixon, Onyx Capital, Onyx Fund, Farr and Robertson violated the RICO Act, 18 U.S.C. § 1964(c). Plaintiffs referred to the enterprise as the "DFR Enterprise" involving Dixon, Farr, Robertson, Onyx Capital, Onyx Fund, Onyx Intelligence, Strategic Moves, LLC, Hi-Tec, E. Robertson Consulting Group, LLC, Second Chance, SCM Credit, SCM Finance, and Sea Jay. (Sec. Am. Comp., ¶ 152) Plaintiffs allege that the DFR Enterprise utilized the relationship between and among the individuals and their common ownership of the corporate defendants and other entities to operate and continue the scheme over time through the several

corporate entities.  (*Id.,* ¶ 153)  Farr, as a member of the DFR Enterprise is alleged to have furthered

the purpose of the enterprise by:

> making affirmative, negligent, or silent misrepresentations to the
> Plaintiffs regarding the investments of the Onyx Fund, the value of
> the Onyx Fund's investments, and the Onyx Fund's financial reports;
> transferring and misappropriating the Subject Monies from Second
> Chance, SCM Credit, SCM Finance, and Sea Jay to himself, Dixon,
> Onyx Capital, Onyx Financial Group, Second Chance, SCM Credit,
> SCM Finance, and Sea Jay; utilizing the Subject Monies for Dixon's
> or Farr's own use; directing thousands of bank account transfers
> among and between the members of the Enterprise; and allowing the
> entities he controls to be utilized as false investment entities.

(*Id.,* ¶ 155B.)

Viewing the fraudulent scheme as a whole, the Second Amended Complaint clearly shows

that between the initial investments by Plaintiffs in June and July 2007, there were capital calls

thereafter through 2009 which required Plaintiffs to make further investments.  (Sec. Am. Comp.,

¶¶ 51, 160-61)  Plaintiffs' "investment" into the Onyx Fund was not a one time "purchase" but

investments were made from 2007 through 2009.  Any alleged acts by Defendant Farr, as alleged

in Count V, occurred throughout this period.  As alleged, "between June 2008 and November 2009,

Farr was listed as the signatory on a bank account for Sea Jay; during that time period more than 700

transactions occurred in that account."  (*Id.,* ¶ 46)  Plaintiffs transferred a total of $23,840,531.98

between June 2007 and June 2009.  (*Id.,* ¶ 48)  Any actions by Defendant Farr alleged under the

RICO claims cannot be separated as post-investment improper management and misappropriation

since the Second Amended Complaint clearly alleges that Plaintiffs made investments from 2007

through 2009.  Plaintiffs' RICO claims are therefore barred by § 1964(c) since the fraudulent

allegations against Defendant Farr and his entities are  "in connection with" the investment value

of the fund at issue.  The RICO claims found in Counts V and VI against the Farr Defendants must

be dismissed.

### D.     STATE LAW CLAIMS

#### 1.     Common Law Conversion (Count VII)

The Farr Defendants seek to dismiss the common law conversion claim in Count VII arguing

that because they received the monies at issue from Dixon and the entities controlled by Dixon, they

are not liable.  Plaintiffs respond that the Amended Complaint sets forth claims against the Farr

Defendants based on their own conduct and their membership in the conspiracy.

"In the civil context, conversion is defined as any distinct act of domain wrongfully exerted

over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins.*

*Co. v. Allstate Ins. Co.,* 439 Mich. 378, 391 (1992); *Dep't of Agriculture v. Appletree Marketing,*

*L.L.C.,* 485 Mich. 1, 13-14 (2010).  For a plaintiff to prevail on a claim of conversion, two points

are essential to be proved:  1) the plaintiff has a right of possession at the time of conversion; and

2) a conversion of the property by the defendant to his or her own use.  *Thomas v. Watt,* 104 Mich.

201, 207 (1895).  "[T]he defendant must have an obligation to return the specific money entrusted

to his care." *Head v. Phillips Camper Sales & Rental, Inc.,* 234 Mich. App. 94, 111 (1999); *Hanover*

*Exchange v. Metro Equity Group, LLC.*, 2009 WL 2143866 *2 (E.D. Mich. July 14, 2009).  The

Michigan Supreme Court has held that "conversion is maintainable for money when trover would

lie under the former practice," and "[t]rover is not maintainable for money unless there [is] an

obligation on the part of the defendant to return the specific money intrusted to his care." *Alfred*

*Shrimpton & Sons v. Culver*, 109 Mich. 577, 580 (1896).  A complaint must allege a separate and

distinct possession of another's property to constitute a claim of conversion.  *Hanover,* 2009 WL

2143866 at *2.  An example of a specific money is "where an individual cashes a check and retains

the full amount of the check when he is entitled to only a portion of that amount." *Id*. In *Garras v. Bekiares,* 315 Mich. 141, 147 (1946), the plaintiff brought an action alleging conversion based on a dispute over a consignment agreement. The Michigan Supreme Court held that because the "plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion." *Id.* "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric.,* 485 Mich. at 14.

In this case, Plaintiffs have failed to allege a specific money entrusted to the Farr Defendants where the Farr Defendants are entitled to return that specific money entrusted to their care. Plaintiffs identify "Subject Monies" in their Second Amended Complaint as contributions to the Onyx Fund pursuant to the Limited Partnership Agreements between Plaintiffs and Onyx Capital. (Sec. Am. Comp., ¶¶ 20-22) The Limited Partnership Agreement's purpose is to invest in companies described in the Private Placement Memorandum. (Sec. Am. Comp., Ex. 2) The Private Placement Memorandum states that Onyx Fund will invest in equity and mezzanine securities of a diverse portfolio of companies across a variety of industries. (Sec. Am. Comp., Ex. 3, p. 5) The Distributions described in the Private Placement states that the Onyx Fund will distribute net proceeds attributable to the disposition of investments in Portfolio Companies, as well as distributions of securities in kind, together with any dividends or interest income received in a certain priority. (Sec. Am. Comp., Ex. 3, pp. 18-19)

Nothing in the Limited Partnership Agreement or the Private Placement Memorandum indicate that the "Subject Monies" identified by Plaintiffs were to be specifically returned to Plaintiffs. The Limited Partnership Agreement and the Private Placement Memorandum state that

13

any monies invested by Plaintiffs, identified by Plaintiffs as the "Subject Monies," were to be

invested by the Onyx Fund in various other companies.  Moneys to be returned to Plaintiffs, if any,

were subject to the Distributions provision in the Limited Partnership Agreement and the Private

Placement Memorandum.  This means that there is no specific monies to be returned to Plaintiffs

which were not subject to investments by the Onyx Fund.  Nothing in the Limited Partnership

Agreement and the Private Placement Memorandum identified any specific monies entrusted to the

Farr Defendants or that the Farr Defendants were obligated to return any part of a specific money

entrusted in their care to Plaintiffs.  The common law conversion claim against the Farr Defendants

must be dismissed for failure to state a claim upon which relief may be granted.

### 2.      Statutory Conversion (Count VIII)

Michigan's conversion statute, M.C.L.A. § 600.2919a provides that a person is entitled to

treble damages of actual damages sustained, plus costs and reasonable attorney fees as a result of

either or both of the following:

> (a) Another person's stealing or embezzling property or converting
> property to the other person's own use.
> (b)  Another person's buying, receiving, possessing, concealing, or
> aiding in the concealment of any stolen, embezzled, or converted
> property when the person buying, receiving, possessing, concealing,
> or aiding in the concealment of any stolen, embezzled, or converted
> property knew that the property was stolen, embezzled or converted.

M.C.L.A. § 600.2919a.  In order to prevail on a claim for statutory conversion, a claimant must first

satisfy the elements of a common law conversion claim.  *Zremba Group, LLC v. Federal Deposit*

*Ins. Corp.,* 2011 WL 721308 *12 (E.D. Mich. Feb. 23, 2011)(unpublished)(citing *J&W Transp.,*

*LLC v. Frazier,* 2010 WL 2178555 *14 (Mich. Ct. App. June 1, 2010)(unpublished)).

Because the Second Amended Complaint fails to state a conversion claim, Plaintiffs'

14

statutory conversion claim must also be dismissed.  Plaintiffs have not asserted that the Farr

Defendants were entrusted specific money in their care which specific money was to be returned to

Plaintiffs.

### 3.     Fraudulent, Negligent and Silent Misrepresentations (Counts IX, X and XI)

The Farr Defendants assert that the fraudulent, negligent and silent misrepresentations claims

against them must be dismissed because these claims are defective in that the Second Amended

Complaint fails to allege a material fraudulent misrepresentation by the Farr Defendants.  Plaintiffs

respond that the Second Amended Complaint sets forth specific instances where Farr made material

misrepresentations to Plaintiffs, or wrongfully failed to disclose material facts.

To assert a claim of fraud, Michigan law requires the plaintiff show the following elements:

"(1) [t]hat the charged party made a material representation; (2) that it was false; (3) that when he

or she made it he or she knew it was false, or made it recklessly, without knowledge of its truth and

as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by

the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby

suffered reliance." *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146,

161-62 (2007).  Allegations of fraud must comply with Rule 9(b), which provides, "a party must

state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge,

and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  A plaintiff

is required, at minimum, to "allege the time, place, and content of the alleged misrepresentation on

which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant; and the injury

resulting from the fraud." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 622 F. Supp. 2d 809, 815 (E.D.

Mich. 2009).  Allegations of fraud "must be made with sufficient particularity and with a sufficient

factual basis to support an inference that they were knowingly made." *Id.* If a complaint fails to show facial plausibility allowing a court to infer that a defendant maliciously, intentionally, or knowingly committed fraud, then the claim should be dismissed. *Id.* A misrepresentation claim requires the defendant to have made a material fraudulent misrepresentation. *Hi Way Motor Co. v. Int'l Harvestor Co.,* 388 Mich. 330, 336 (1976).

Plaintiffs identified the Farr Defendants' misrepresentations in paragraphs 23-34, 51-55, 59-67, 70, 83-92, 108-112, 155, and 157-160. Plaintiffs generally argue that the Farr Defendants conspired to defraud Plaintiffs. However, the conspiracy claim is a separate claim from the actual misrepresentation claims which will be addressed below.

Paragraphs 23-34 do not allege any misrepresentations by the Farr Defendants to Plaintiffs. Only paragraph 24 identifies the Farr Defendants and states that they "conspired and agreed to implement a scheme to induce Plaintiffs to invest funds ..." There are no misrepresentations alleged against the Farr Defendants. Paragraphs 51-55 and 59-67 do not mention the Farr Defendants. Paragraph 70 alleges that the amounts reflected in the Onyx Fund's "general ledger as investments in SCM Credit were actually transferred to bank accounts in the names of one or more of Defendant Second Chance's used car dealership or Defendant Farr." There is nothing in paragraph 70 alleging a misrepresentation by any of the Farr Defendants.

Paragraphs 83-92 of the Second Amended Complaint allege that the Farr Defendants knew that the money received from Dixon and Onyx Capital came from public pension funds and that the money was transferred for investment purposes, that Farr attended a meeting with the Board of Trustees of Pontiac General which included a discussion of the Onyx Fund's investments in the Farr Defendants and that Farr did not notify the Plaintiffs of the full amount, or lack of proper investment

16

agreements covering the Subject Monies received by the Farr Defendants, that the Farr Defendants, along with the other Defendants, conspired and agreed to coordinate additional misappropriations from the Onyx Fund.  Although the Farr Defendants are identified in these paragraphs, there are no allegations of a material misrepresentation made by the Farr Defendants, other than Farr attending a meeting or that Farr did not notify the Plaintiffs of the full amount or lack of proper investment agreements.  These allegations are insufficient to state a fraudulent misrepresentation claim under Rule 9(b) of the Rules of Civil Procedure.

Paragraphs 108-112 do not allege any fraudulent misrepresentations made by the Farr Defendants.  Paragraph 109 identifies Dixon and Onyx Capital as making omissions and affirmative misrepresentations to Plaintiffs.  The Farr Defendants are mentioned in paragraph 110 as participating in the conspiracy and concealing their fraudulent conduct.  There are no misrepresentations allegedly made by the Farr Defendants in paragraph 110.

In Paragraph 155, in describing the DFR Enterprise to support a RICO claim, Plaintiffs allege that Farr made affirmative, negligent or silent misrepresentations to Plaintiffs regarding the investments of the Onyx Fund, the value of the Onyx Fund's investments and the Onyx Fund's financial reports and that Farr transferred and misappropriated the Subject Monies.  However, these conclusory allegations are insufficient to state a fraudulent misrepresentation claim under Rule 9(b) since Plaintiffs failed to state with particularity the circumstances constituting the fraud or mistake, such as the time, place, and content of the alleged misrepresentation on which Plaintiffs relied.

Paragraphs 157-160 allege the RICO pattern and predicate offenses as to the capital call made by the Onyx Fund.  There are no material fraudulent misrepresentations alleged against the Farr Defendants in these paragraphs as required by Rule 9(b).

17

In the Fraudulent Misrepresentation claim in Count IX, Plaintiffs allege that Farr made a number of misrepresentations of material facts each of which was false, referring to the "above paragraphs" without specifically identifying which paragraphs. As noted above, none of the paragraphs identified by Plaintiffs in their response brief allege any misrepresentations by the Farr Defendants. Count IX must be dismissed as to the Farr Defendants.

Count X alleges innocent misrepresentation or negligent misrepresentation. To establish a claim for negligent misrepresentation, a plaintiff must show that "a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Mabel Cleary Trust v. Edward-Marlah Muzyl Trust,* 262 Mich. App. 485 (2003). Whether a duty of care exists is a "question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Friedman v. Dozorc,* 412 Mich. 1 (1981). There are a wide variety of factors used to determine whether a duty exists, including the relationship of the parties and the foreseeability of the risk. *Friedman v. Dozorc,* 412 Mich. 1 (1981). There must exist a sufficient relationship between the plaintiff and the defendant. *Schultz v. Consumers Power Co.,* 443 Mich. 445 (1993). There must be some breach of duty distinct from a breach of contract and that the violation of a legal duty is separate and distinct from the contractual obligation. *Williams v. Scottrade, Inc.,* 2006 WL 2077588 * 6 (E.D. Mich. Jul. 24, 2006)(unpublished)(citing *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.,* 454 Mich. 65, 84 (1997) and *Hart v. Ludwig,* 347 Mich. 559, 563 (1956)).

In this case, the relationship between Plaintiffs and the Farr Defendants, if any, arose from the contractual obligation between Plaintiffs and Onyx Capital in forming Onyx Fund, which is subject to the Limited Partnership Agreement. Without the Limited Partnership Agreement, there

would be no relationship, between Plaintiffs and the Farr Defendants since the Limited Partnership Agreement governed Plaintiffs' investments in the Onyx Fund.  Count X fails to allege any duty owed by the Farr Defendants to Plaintiffs apart from the Limited Partnership Agreement.  The innocent or negligent misrepresentation claim against the Farr Defendants must be dismissed for failure to state a claim upon which relief may be granted.

Count XI alleges silent fraud as to all Defendants.  "Michigan courts have recognized that silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M&D, Inc. v. W.B. McConkey,* 231 Mich. App. 22, 29 (1998).  Mere nondisclosure is not enough to state a claim for silent fraud; the plaintiff must show that the party suppresses part of the truth when asked. *Id.*  As in negligent or innocent misrepresentation claim, a plaintiff must show that the legal duty is separate and distinct from the contractual obligation. *Faber v. FJH Music Co., Inc.,* 2007 WL 1098259 *6 (E.D. Mich. Apr. 11, 2007)(unpublished) (citations omitted).  As set forth above, Plaintiffs have failed to allege any duty owed by the Farr Defendants to Plaintiffs apart from the Limited Partnership Agreement.  The silent fraud claim must be dismissed as to the Farr Defendants.

### 4.    Breach of Fiduciary Duty (Count XII)

The Farr Defendants argue that the breach of duty claim must fail when no duty is alleged separate and apart from a contract.  Plaintiffs respond that this argument ignores that Plaintiffs have a viable claim for breach of fiduciary duty based on their involvement as co-conspirators with Dixon and Onyx Capital.

In Michigan, "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Missouri*

19

*Synod,* 237 Mich. App. 567, 580-81 (1999). "Relief is granted when such position of influence has been acquired and abused, when confidence has been reposed and betrayed." *Smith v. Saginaw Sav. & Loan Ass'n,* 94 Mich. App. 263 (1979).

In Count XII, Plaintiffs allege that in addition to the duties contained in the Limited Partnership Agreement, Dixon and Onyx Capital owed a fiduciary duty to Plaintiffs. Plaintiffs allege that the Farr Defendants conspired to defraud Plaintiffs, which conspiracy included the breach of fiduciary duty by Dixon and Onyx Capital. As noted above, the conspiracy claim is a separate claim which will be addressed below. In this count, Plaintiffs do not allege that the Farr Defendants violated any fiduciary duty the Farr Defendants owed to Plaintiffs; only that Dixon and Onyx Capital owed a fiduciary duty to Plaintiffs. Plaintiffs failed to allege any breach of fiduciary duty owed by the Farr Defendants to Plaintiffs. There are no allegations in the Second Amended Complaint that the Farr Defendants entered into a contract with Plaintiffs which would give rise to a fiduciary duty by the Farr Defendants. None of the Farr Defendants are parties to the Limited Partnership Agreement. Count XII must be dismissed as to the Farr Defendants.

### 5.    Unjust Enrichment, Count XV

The Farr Defendants argue that the unjust enrichment claim must be dismissed since they did not receive any monies from Plaintiffs. In response, Plaintiffs claim that the Farr Defendants benefitted from the scheme to misappropriate the Subject Monies and it would be inequitable to permit the Farr Defendants to retain those benefits.

Michigan law will sustain a claim of unjust enrichment when the plaintiff is able to establish the requisite elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Sweet Air Inv., Inc.*

20

*v. Kenney,* 275 Mich. App. 492, 504 (2007).  "There is no claim for unjust enrichment when there exists a valid contract covering the same subject matter."  *Iverson Industries, Inc. v. Metal Management Ohio, Inc.*, 525 F. Supp. 2d 911 (E.D. Mich. 2007).  In *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 199-200 (2006), the Michigan Supreme Court stated that "we perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit [unjust enrichment] claim against a *different* defendant with whom no express contract exists."  *Id.* (italics added).  The law operates to imply a contract in order to prevent unjust enrichment.  *Barber v. SMH (US), Inc.,* 202 Mich. App. 366, 375 (1993).

As to the Farr Defendants, Plaintiffs have not alleged an express contract with the Farr Defendants.  In Count XV, Plaintiffs allege that each of the Defendants have received some of the Subject Monies and received a monetary benefit from the Subject Monies provided by Plaintiffs. (Sec. Am. Comp., ¶ 255)  At this juncture, Plaintiffs have stated the equitable claim of unjust enrichment against the Farr Defendants because Plaintiffs have alleged (1) the receipt of a benefit by the Farr Defendants from Plaintiffs, and (2) an inequity resulting to Plaintiffs because of the retention of the benefit by the Farr Defendants.  *Sweet Air Inv.,* 275 Mich. App. at 504.  Since there is no express contract alleged between Plaintiffs and the Farr Defendants, the law may operate to imply a contract in order to prevent unjust enrichment.  Count XV remains as to the Farr Defendants.

### 6.    Money Had and Received (Count XVI)

The Farr Defendants move to dismiss the money had and received count, an equitable claim, because Plaintiffs are requesting a money judgment.  Plaintiffs respond that the Court has concurrent jurisdiction over legal and equitable claims.

21

An action for money had and received is an equitable action, and can be maintained in cases where in equity and in good conscience the money belongs to the plaintiff.  No privity is necessary and the claim is only on the money which the defendant has actually received.  *Beardslee v. Horton*, 3 Mich. 560 (1855).  The claim of money had and received appears to be the same claim as unjust enrichment.  *Herrman v. Gleason,* 126 F.2d 936, 940 (6th Cir. 1942); *Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.,* 2011 WL 1193647 *5 n. 3 (E.D. Mich. 2011) (unpublished).  Because courts have concurrent jurisdiction over legal and equitable claims and for the reasons set forth above as to the unjust enrichment claim, at this juncture, Plaintiffs have stated a money had and received claim against the Farr Defendants.

### 7.    Civil Conspiracy (Count XVII)

The Farr Defendants move to dismiss the civil conspiracy count arguing that the Second Amended Complaint does not allege how the entities formed the agreement.  Plaintiffs respond that they have sufficiently stated a civil conspiracy count.

To prove civil conspiracy, a plaintiff must prove "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Feahany v. Caldwell*, 175 Mich. App. 291 (1989) (citing *Temborious v. Slatkin*, 157 Mich. App. 587 (1986).  The agreement, or preconceived plan, to do the unlawful act is the thing which must be proved.  Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven.  It is sufficient if the circumstances, acts and conduct of the parties establish an Agreement in fact.  *Temborious,* 157 Mich. App. at  600.  A predicate offense must exist upon which a charge of conspiracy could be based.  *Advanced Accessory Sys., LLC v. Gibbs,* 71 Fed. Appx. 454, 471 (6th Cir. July 16, 2003).

Although some of the claims have been dismissed as to the Farr Defendants, some of the claims remain against them. The fraudulent claims, among others, also remain as to Dixon and other entities. Predicate offenses at this juncture remain upon which a conspiracy claim could be based. Because direct proof of agreement is not required between the co-conspirators, the Farr Defendants' argument on this point is without merit. The civil conspiracy claim against the Farr Defendants remain.

### 8.    Equitable Accounting (Count XXI) and Constructive Trust (Count XXII)

The Farr Defendants argue that the equity claims in Counts XXI and XXII must be dismissed because Plaintiffs have an adequate remedy at law and because there is no fiduciary relationship between Plaintiffs and the Farr Defendants. Plaintiffs respond that both remedies at law and in equity may be considered by the Court and there are sufficient facts to impose a constructive trust.

Michigan courts allow a party to pursue an equitable accounting action where the plaintiff is unsure of the amounts at stake and where the accounts at issue are greatly complicated. *Digital 2000, Inc. v. Bear Communications, Inc.,* 130 Fed. Appx. 12, 22 (6th Cir. 2005). In light of the broad discovery available to litigants, accounting actions are of dubious utility. *Id.* at 23. A plaintiff seeking an accounting has no right to proceed in equity if he has an adequate remedy at law. *Wilson v. Continental Development Co.,* 112 F.Supp.2d 648, 663 (W.D. Mich. 1999). The burden of proof is on the plaintiff to show the inadequacy of the legal remedy. *Id.* Courts have long held that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue. *Id.*

In Michigan, "[a] constructive trust is a remedial equitable device employed to prevent injustice in a particular case. A court of equity will impose a constructive trust only if conscience

demands it." *Central States, Southeast & Southwest Areas Pension Fund v. Howell,* 227 F.3d 672, 676 (6th Cir. 2000). A constructive trust does not arise until a judicial decision imposes such a trust under Michigan law. *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir. 2000). Courts may impose a constructive trust even if a plaintiff may have a remedy at law, such as damages. *Id.* at 904.

In this case, equitable accounting is unnecessary in light of the fact that Plaintiffs' Second Amended Complaint establishes the amount of Subject Monies involved. The equitable accounting claim is dismissed as to all Defendants. As to the constructive trust equitable remedy, since the underlying claims are still at issue and there is no determination at this time whether such a trust is required, the Court denies without prejudice the motion to dismiss the constructive trust equitable remedy claim.

## IV.   DISCOVERY-RELATED MOTIONS

### A.   Motion to Stay Discovery filed by the Farr Defendants

The Farr Defendants seek to stay discovery until the Court has ruled on their Motion to Dismiss which may significantly limit the relevant scope of discovery. In response, Plaintiffs argue that so far in this litigation the Farr Defendants have given the appearance they would engage in discovery but now have abruptly stopped short of actually producing the discovery documents they requested.

Given the ruling on the Farr Defendants' Motion to Dismiss, the Motion to Stay Discovery is now MOOT. Discovery may proceed.

### B.   Plaintiffs' Motion to Compel Discovery from the Farr Defendants

Plaintiffs served discovery requests on the Farr Defendants on November 19, 2010. Despite the repeated written and oral assurances and conferences with Plaintiff and the Court, the Farr

Defendants have refused to provide full discovery responses. Plaintiffs seek to compel the Farr Defendants to respond to the discovery requests. Given that the Farr Defendants were defaulted by the Plaintiffs, full discovery was not required to be provided by the Farr Defendants. Now that the Court has ruled that the default be set aside, Plaintiffs may again request the Farr Defendants to provide discovery. Should the Farr Defendants fail to respond within the time required by the rules, Plaintiffs may renew their Motion to Compel Discovery from the Farr Defendants.

**V.    CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Motion to Set Aside Clerk's Entries of Default **(Doc. No. 125, filed 11/30/2010)** is GRANTED. The Clerk's Entries of Default as to Defendants 1097 Sea Jay, LLC, Michael A. Farr, SCM Credit, LLC, SCM Finance, LLC and Second Chance Motors, Inc. are SET ASIDE.

IT IS FURTHER ORDERED that the Motion to Dismiss Second Amended Complaint **(Doc. No. 114, filed 11/29/2010)** is GRANTED IN PART and DENIED IN PART as more fully set forth above. Counts V (RICO), VI (RICO), VII (common law conversion), VIII (statutory conversion), IX (fraudulent misrepresentation), X (negligent misrepresentation), XI (silent misrepresentation), XII (breach of fiduciary duty) are DISMISSED as to Defendants 1097 Sea Jay, LLC, Michael A. Farr, SCM Credit, LLC, SCM Finance, LLC and Second Chance Motors, Inc. Counts XV (unjust enrichment), XVI (money had and received), XVII (civil conspiracy), XXII (constructive trust) remain as to these Defendants.

IT IS FURTHER ORDERED that Count XXI, the equitable accounting count, is DISMISSED as to all Defendants.

25

IT IS FURTHER ORDERED that the Motion to Stay Discovery **(Doc. No. 150, filed 2/25/2011)** is MOOT.

IT IS FURTHER ORDERED that the Motion to Compel Discovery from the Farr Defendants **(Doc. No. 155, filed 3/15/2011)** is DENIED without prejudice.  The current discovery cut off is April 30, 2012 and a status conference is set for Tuesday, January 17, 2012, 2:15 p.m.


 S/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 29, 2011, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160